Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 4098 | DATE | Mar. 15, 2002 |
| CASE TITLE | Christopher Russ, et al   v   Van B. Watts IV, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing 4/9/02, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, Defendant's motion to dismiss is granted with respect to counts II, IV and VI, but denied with respect to all other counts. Defendants' answers to the remaining counts are due by 4/5/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | MAR 2 0 2002 date docketed | 19 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 0 2002

CHRISTOPHER RUSS, BRANDI SPENCER, )
JABREN SANDIFER, VERA LOVE, and )
ISAAC RUSS, )
)
Plaintiffs, )
) No. 01 C 4098
v. )
) Judge Robert W. Gettleman
VAN B. WATTS, IV, Star No. 11999, PHILLIP )
BANAZIEWICZ, ROBERT HELSON, in their )
individual capacities, and THE CITY OF )
CHICAGO, a municipal corporation, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

On June 5, 1999, Robert Russ ("Russ") was shot and killed by Chicago Police officer Van B. Watts, IV ("Officer Watts") during a traffic stop on the Dan Ryan Expressway in Chicago, Illinois. Plaintiffs Christopher Russ, Brandi Spencer, and Jabren Sandifer were Russ's siblings. Plaintiffs Vera Love and Isaac Russ were Russ's parents. Plaintiffs' amended complaint sets forth six separate claims.

Three of those counts are based on 4 U.S.C. §1983 and are alleged on behalf of Russ's parents against Officer Watts, in addition to Chicago Police officers Phillip Banaziewicz ("Officer Banaziewicz") and Robert Helson ("Officer Helson") (together referred to as "the individual officers"), who were apparently also present during the relevant events on June 5, 1999. The first of those counts, Count I, alleges that just prior to his death, Russ did not pose a threat of violence or great bodily harm, he was not committing a forcible felony, and he was not attempting to resist or escape arrest, or to do anything else that would justify his killing. Count I

further alleges that, as a direct proximate cause of the individual officers' conduct, Russ's parents were deprived of their due process right of "association with their son . . . including the loss of society and companionship as secured by the Fourth and Fourteenth Amendments" to the U.S. Constitution.

Count III relies on the allegations above and further alleges that the individual officers "witnessed, observed or participated in the use of excessive force and battery" against Russ, and also that one or more of the individual officers "failed to restrain the other officers from committing the described acts" despite having the opportunity to do so, "in violation of the [individual] officers' sworn duty to enforce the laws of preserving peace and protecting [Russ]." As a direct and proximate result of that failure, Russ's parents allege, the individual officers deprived them of their "due process right to the association with [Russ], including the loss of society and companionship as secured by the Fourth and Fourteenth Amendments."

Similarly, Count IV alleges that the individual officers "did conspire among themselves to deprive [Russ's parents] of their constitutional rights, i.e., to hinder the due course of justice by engaging in a cover-up of the true circumstances of [Russ's] death" and to cover-up the use of excessive force upon Russ. Count IV also alleges that the individual officers reached an "explicit or implicit 'meeting of the minds'" on June 5, 1999, and that said conspiracy continued thereafter and has manifested itself through many "overt acts to effectuate and promote the conspiracy," as set forth in the amended complaint. According to Russ's parents, this conspiracy has deprived them of their "constitutional rights under the Fourth and Fourteenth Amendments by hindering the due course of justice and engaging in a coverup of the defendants' true involvement in the death of the decedent."

Additionally, in Count V, Russ's parents allege a §1983 Monell claim against the City of Chicago, claiming that it did not provide proper training or a proper policy or procedure for its officers regarding the use of force in removing an occupant from a vehicle.

Russ's siblings allege two claims, the first of which mirrors Russ's parents' claim in Count I. Count II avers that the individual officers violated Russ's siblings' due process rights by depriving them of their "right to the association with [Russ], including the loss of society and companionship as secured by the Fourth and Fourteenth Amendments." Finally, in Count VI, Russ's siblings assert that the individual officers, as well as other unknown officers,

> engaged in a conspiracy to impede the due course of justice with intent to deny the plaintiffs the equal protection of the laws or equal right to the privileges and immunities, including access to the courts, under 42 U.S.C. §1985 as guaranteed by the Due Process Clause of the Fourteenth Amendment and the right to seek judicial redress as guaranteed by the First Amendment.

Defendants City of Chicago and Officer Helson (referred to collectively as "defendants") have filed motions to dismiss each of plaintiffs' claims, asserting, in various permutations, that plaintiffs lack standing to bring the claims, or that the averments thereof fail to state claims upon which relief may be granted. For the reasons explained below, defendants' motions are granted in part and denied in part.

## LEGAL STANDARD

The question of standing is essentially the question of whether plaintiffs are "entitled to have the court decide the merits of the dispute or particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing is a jurisdictional requirement. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990). As a result, in determining whether plaintiffs have standing, the court accepts as true all well-pleaded allegations in the complaint, but also considers information

3

beyond the complaint. Perry v. Village of Arlington Heights, 186 F.3d 826, 829 (7th Cir. 1999) (citing Warth, 422 U.S. at 501); see also United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996). As the Seventh Circuit explained in Perry,

> A party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) an injury in fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant and not from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision. These three elements have been described as the irreducible constitutional minimum of standing.

186 F.3d at 829 (internal quotations and citations omitted). Further, "where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof'. . . . [which] requires a showing by a preponderance of the evidence that standing exists." Id. (internal quotations and citations omitted).

Conversely, in ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would plaintiffs' allegations entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Travel All Over the World, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

4

# DISCUSSION[1]

Defendants divide their attack on plaintiffs' amended complaint into four main arguments, addressed by the court in this order: 1) that Russ's parents' claims must be dismissed because only Russ's estate has standing to raise them; 2) that Russ's siblings lack standing to bring their Fourteenth Amendment claim; 3) that Seventh Circuit precedent forecloses Russ's siblings' claim of denial of access to the courts; and 4) that all Russ's parents lack standing to bring any claims based on the Fourth Amendment to the U.S. Constitution.

## I. RUSS'S PARENTS' STANDING

In their attempt to have the claims brought by Russ's parents (Counts I, III, IV and V) dismissed, defendants attack the case on which Russ's parents' base their standing: the Seventh Circuit's decision in Bell v. Milwaukee, 746 F.2d 1205 (7th Cir. 1984). In Bell, the court held that the parents of a twenty-three year-old decedent had standing to sue based on their constitutionally protected interest in his companionship, care, custody, and management. In so holding, the court noted that the decedent, though beyond the age of legal adulthood, was single, had no children, and "had not become part of another family unit; his father's family was his immediate family." 746 F.2d at 1245.

Defendants argue that Russ's parents cannot rely on Bell because Russ was the father of a child prior to his death, and that the mother of Russ's child has brought claims in Illinois state court as the "Independent Administrator of the Estate of [Russ]." Defendants assert that these facts indicate that Russ was an independent adult with a separate family unit at the time of his

---

[1] Given the nature of defendants' dismissal arguments, the court need not elaborate on the facts surrounding Russ's death at this stage of the proceedings.

5

death, unlike in Bell. Therefore, defendants conclude, Bell is inapplicable and Russ's parents are without standing to pursue their claims.

Russ's parents respond by pointing out that their son's child was not born until three months after Russ died. Russ's parents further note that Russ never married, and that, aside from living on the Northwestern University campus while he attended classes full-time there during the school year, Russ never lived outside his mother's home. Russ's parents also assert that when Russ was living at home, his room and board were provided by his parents, he worked only part-time, and he did not provide financial support to any dependant or other person. Based on these facts, Russ's parents argue, the court should conclude that Bell governs the instant case.

In reply, defendants point out that other courts have held contrarily to Bell. For example, defendant argues, the court in Valdivieso Ortiz v. Burgos 807 F.2d 6, 8 (1st Cir. 1986), pointed out two significant differences between its case "and those in which the Supreme Court has recognized a substantive right in the parent-child relationship." Those reasons were that: 1) the decedent in that case, "was over 21 at the time of his death, was not a minor child still within 'the care, custody and management' of his parents"; and 2) the state was not seeking impose on the child "its own choice as to how or by whom he should be reared." Id. For those reasons, the Valdivieso court concluded that the deceased's parents did not have standing to sue. See also Butera v. District of Columbia, 235 F.3d 637, 656 (D.C. Cir. 2001) (concluding that "a parent does not have a constitutionally protected liberty interest in the companionship of a child who is past minority and independent").

6

While defendants' points are valid, Bell, unlike Valdivieso and Butera, is binding precedent in this district. In Bell, the Seventh Circuit refused to find that "a constitutional line based solely on the age of the child should be drawn" when determining whether "a parent's interest in the society and companionship of a child is less substantial when the child is an adult and not living with the parent." 746 F.2d at 1245. The Bell court pointed out that, "The Supreme Court's decisions protect more than the custody dimension of the parent-child relationship." Id. Specifically, the Bell court found that the protected relationship "includes the parent's 'interest in the companionship, care, custody, and management' of the child." Id. (citing Stanley v. Illinois, 405 U.S. 645, 651 (1972)). Further, the Bell court noted, the "care and companionship of a child is afforded due process protection where the parent raised and nurtured the child [but also] . . . where the parent has never had legal custody." 746 F.2d at 1245 (citations omitted). The court then reasoned:

> Moreover, Daniel was single and had no children. He had not become a part of another family unit; his father's family was his immediate family. Wisconsin law permits parents in wrongful death actions to recover damages for loss of society and companionship regardless of the age of the child at death. Wis. Stat. § 895.04(4) . . . . Also, there was substantial testimony regarding the warm and close relationship between Daniel Bell and his father. Further, this deprivation was far more substantial than the unlawful removal of a child from the parent's custody; it was the annihilation of the parent-child relationship. The jury was fully aware that Daniel was no longer a minor, and it was appropriate for them to consider that fact (as they were instructed to do) in assessing the damages awarded to Dolphus Bell's estate for loss of Daniel's society and companionship. Daniel's age and separate residence were matters for the jury to consider when determining damages. These were not a bar to any recovery at all.

Id. Thus, to answer the question of standing in the instant case, the court must determine whether Russ had become part of another family unit.

7

Based on the facts provided by the parties, the only appreciable difference between Russ and the decedent in Bell is that six months prior to his death, Russ impregnated a woman. The court hesitates to deviate from Bell's clear holding based on this fact alone. Defendants have presented no evidence tending to show that Russ and the mother of his child had formed their own family unit; as the facts now stand, it may very well be that Russ and the mother of his child had not interacted at all since the child's inception and that, meanwhile, Russ had remained close to, and dependent upon, his parents. Given this, the court concludes that Russ's parents have met their burden of proving facts by a preponderance of the evidence that support their standing in the instant case. See Perry, 186 F.3d at 829. Thus, defendants' motion to dismiss is denied with respect to this theory.

## II. RUSS'S SIBLINGS' STANDING TO BRING §1983 CLAIM

Next, defendants argue that Russ's siblings do not have standing to pursue Count II, their claim that the individual officers deprived them of their due process right to associate with their brother "as secured by the Fourth and Fourteenth Amendments." According to defendants, "the courts are uniform in their holdings that siblings cannot recover for the death of another sibling." See Bell, 746 F.2d at 1247-48 (declining to recognize standing for siblings to bring claims asserting loss of society and companionship under the Fourteenth Amendment); McBride v. Lindsay, 718 F. Supp. 24, 16-27 (N.D. Ill. 1989) (same).

Russ's siblings urge the court to "reserve ruling" on this claim, arguing that, "No prejudice will accrue to any party and no additional cost or time will be expended [while] ruling is reserved and it will allow the court to consider a complete factual record in ruling on these claims." Alternatively, Russ's siblings encourage the court to deviate from the holding in Bell,

8

arguing that, "judicial refinements to the scope of the constitutional rights of family members since Bell now justify a sibling's right to association." In support of this contention, Russ's siblings point out that while the Seventh Circuit's holding in Bell was based in part on the fact that the "Wisconsin legislature has expressly decided that no tort recovery is in order for the loss of society and companionship among siblings," the Illinois Supreme Court subsequently held that the Illinois Wrongful Death Act does allow siblings to bring suit. Compare Bell, 746 F.2d at 1247 and In Re: Estate of Finley, 151 Ill. 2d 95 (Ill. 1992).

Russ's siblings also address the concern expressed in Bell that if it assigned siblings' relationships constitutional protection, "there could be no principled way of limiting such a holding to the immediate family or perhaps even to blood relationships." Bell 746 F.2d at 1247. According to plaintiffs, language in a Seventh Circuit case decided since Bell indicates that while minor disruptions to a familial relationship do not fall within the ambit of a constitutional liberty interest, the permanent loss of a sibling might. See e.g., Neihus v. Liberio, 973 F.2d 526, 533 (7th Cir. 1992) (stating that the "relationships that define the nuclear family--relationships that for many people are constitutive of their very identity--are protected," but concluding that the plaintiff's loss of her husband's sexual and other services apart from financial support does not rise to the level of a constitutional deprivation).

The court cannot grant either of Russ's siblings' requests. As explained above, the Seventh Circuit's ruling in Bell is binding precedent in this district. Bell clearly holds that, "under present constitutional authorities the siblings cannot recover under [§]1983." 746 F.2d at 1248. Russ's siblings fail to explain how a more complete factual record will change application of this precedent. Further, Illinois' allowance of wrongful death claims brought by blood-related

9

siblings in certain situations makes for an unconvincing argument in the context of the instant case[2] that, at any rate, addresses only one of the grounds set forth by the Bell court in reaching its decision. See Bell, 746 F.2d at 1247. The most important ground set forth in Bell appears to be the necessity of drawing a clear line demarcating which familial relationships are afforded constitutional protection and which are not. See id. The Bell court observed that while many Supreme Court opinions discuss the importance of the family unit, those examining liberty interests "base their holdings on the parent's constitutional right to raise, associate with, and to make decisions affecting the family." Id. at 1246 (citing Caban v. Mohammed, 441 U.S. 380, 394 (1979); Stanley v. Illinois, 405 U.S. 645, 651 (1972)). The Bell court further noted that while Moore v. City of East Cleveland, 431 U.S. 494 (1977), appeared to offer the most support for the plaintiffs' claims (because the protected relationship was between a grandmother and her grandchildren in that case), that decision was "only a plurality opinion" and "without more analogous precedent" it found that it could not "attach a constitutional dimension to the siblings' claim for lost society and companionship." Bell, 746 F.2d at 1247.

Plaintiffs have attempted to address this weakness in their argument through citation to Neihus. However, the court notes that even if Russ's siblings' loss of their right to associate with their brother is closer to comprising a constitutional liberty interest than the plaintiff's loss of consortium in Neihus, that decision nonetheless cites Bell approvingly for the fact that, "even the

---

[2] Russ's siblings' argument only partially addresses the Bell court's reliance on Wisconsin law because, although the Illinois Wrongful Death Act allows some siblings to recover, Russ's siblings would not be allowed to recover due to the fact that Russ has a descendant. See In Re: Estate of Finley, 151 Ill. 2d 95, 101 (1992). The court is not inclined to deviate from Bell in the instant case based on a change in Illinois law that would not apply to Russ's siblings.

10

panel that decided <u>Bell</u> thought a limiting principle necessary, and held that the siblings of the victim could not sue for the loss of his companionship." <u>Neihus</u>, 973 F.2d at 533. Thus, the court relies on the clear line drawn in <u>Bell</u> and concludes that Russ's siblings do not have standing to bring constitutional claims asserting a due process right to associate with their brother. Defendants' motion to dismiss Count II is granted.

## III. RUSS'S SIBLINGS' CLAIM OF DENIAL OF ACCESS TO THE COURTS

Next defendants move to dismiss Count VI, Russ's siblings' claim that the individual defendants' conduct denied them access to the courts in violation of 42 U.S.C. §1985. Defendants argue that, "While <u>Bell</u> allowed such a claim," that case is distinguished with respect to this claim because "the denial of access to the courts [in <u>Bell</u>] meant that the family had to wait twenty years to file suit." "Moreover," defendants write, "<u>Bell</u> limits itself 'to the particularly egregious set of facts [therein],'" citing <u>Bell</u>, 746 F.2d at 1264, and citing <u>Vasquez v. Hernandez</u>, 60 F.3d 325, 327 (7th Cir. 1995), and <u>Thompson v. Boggs</u>, 33 F.3d 847, 852-53 (7th Cir. 1994), for additional support. In the instant case, defendants point out, Russ's death occurred on June 5, 1999, his parents filed a wrongful death suit on July 12, 1999, and his siblings filed their first complaint on June 4, 2000. Thus, defendants conclude, <u>Bell</u> is distinguished in this respect and Count VI must be dismissed because it is impossible for Russ's siblings to state a claim for denial of access to the courts.

Russ's siblings have alleged that defendants,

> engaged in a conspiracy to impede the due course of justice with intent to deny the plaintiffs the equal protection of the laws or equal right to the privileges or immunities, including access to the courts, under 42 U.S.C. §1985 as guaranteed by the Due Process Clause of the Fourteenth Amendment and the right to seek judicial redress as guaranteed by the First Amendment.

11

Russ's siblings argue that without meaningful discovery, they cannot know the extent of defendants' alleged conspiracy, which prevents them from showing that the actions the individual officers took in furtherance of that conspiracy did in fact deny them meaningful access to the courts. Russ's siblings align the facts of the instant case with Bell but distinguish them from the facts in Vasquez and Thompson. According to Russ's siblings, the reasoning in Vasquez and Thompson should not apply in the instant case because the plaintiffs in those cases were "personally involved in the incident, had firsthand knowledge of the facts and circumstances of their arrests and were capable of being witnesses on their own behalf," whereas Russ and the decedent in Bell "were killed while in the defendants' custody and could never bear witness to the truth." Russ's siblings also distinguish Vasquez and Thompson on the grounds that in both of those cases, the plaintiffs' §1985 claims were decided after the conclusion of discovery rather than at the pleading stage. Russ's siblings argue:

> A conspiracy to cover up a wrongful killing will not be exposed by the timely filing of a lawsuit. The very object of the conspiracy is to prevent an investigation or lawsuit from disclosing the existence of the cover up. If the defendants' view of a conspiracy to cover up is accepted, a plaintiff's right to bring a claim for denial of access to the courts would disappear the moment it was filed, because filing the claim gives plaintiff her access.

Russ's siblings' points are well-taken, but the court agrees with defendants. The Bell court's holding with respect to the plaintiffs' right of access claim under 42 U.S.C. §1985 was motivated by the "particularly egregious set of facts" presented by the police conduct in that case and the prejudice resulting from the twenty-year delay that conduct caused. Bell, 746 F.2d at 1264. As highlighted by the Seventh Circuit in Vasquez, the Bell court recognized that, "Not every act of deception in connection with a judicial proceeding gives rise [to a constitutional

12

action]." 60 F.3d at 329 (citing Bell, 746 F.2d at 1265). In the instant case, as in Vasquez and Thompson, the swift filing of Russ's siblings' claims—as well as the wrongful death action filed in state court five weeks after Russ was killed—indicates that while the individual officers' alleged conspiracy may have been designed to deny plaintiffs with meaningful access to the courts, that intention clearly did not come to fruition. See Vasquez, 60 F.3d at 329; Thompson 33 F.3d at 852-53. Thus, in this respect, Bell does not apply to the instant case. The court also notes that it has already dismissed Russ's siblings' substantive constitutional claim, raising some doubt as to whether they in fact have a constitutional right of access to pursue a claim for which they lack standing. The court therefore grants defendants' motion to dismiss Count VI.

## IV. PLAINTIFFS' FOURTH AMENDMENT CLAIMS[3]

Defendants argue that Russ's parents lack standing to bring the §1983 claims averred in their amended complaint. According to defendants, Russ's parents must show they were deprived of a right, immunity or privilege secured by the Constitution or laws of the United States by a person acting under state law, in order to prevail on their §1983 claims. Defendants argue that Russ's parents' claims must be premised on the Fourth Amendment because in Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court held that:

> All claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

---

[3] Because only Russ's parents' claims remain in the instant case, the court addresses defendants' final argument with respect to Russ's parents only.

13

Defendants argue:

> "All claims" should mean exactly that — all claims. Because Plaintiffs in this case are alleging [that] a violation of their civil rights resulted from the use of excessive force against Russ (going so far as to title Count III "Failure To Prevent The Use of Excessive Force"), any claims should be governed by the Fourth Amendment.

But Russ's parents cannot bring Fourth Amendment claims, defendants argue, because such claims "are personal and may not be vicariously asserted by others merely because they have been adversely affected by the unreasonable seizure of another." If anyone can bring a Fourth Amendment claim, defendants argue, it is the Administrator of Russ's estate, a role which is being filled in Illinois state court by the mother of Russ's child.[4]

Russ's parents respond to this argument by asserting that they have not brought excessive force claims under the Fourth Amendment. Rather, Russ's parents contend, they base their §1983 claims on their liberty interest in the companionship, care, custody, and management of their son which is guaranteed by the Fourteenth Amendment. See Bell, 746 F.2d at 1242-45. Thus, Russ's parents' argument goes, while defendants' violation of Russ's Fourth Amendment

---

[4] Defendants' reliance on Hudson v. Kelly, 1999 U.S. Dist. LEXIS 8937, *15-16, 1999 WL 412705, *4 (N.D. Ill. June 3, 1999), in support of this argument is misplaced. In Hudson, the plaintiffs alleged what was clearly a Fourth Amendment improper search and seizure claim on behalf of their father without alleging that they were doing so on behalf of his estate and without alleging any violation of their personal constitutional rights. See id. Additionally, as the Hudson court pointed out:

> The alleged unconstitutional arrest of [the plaintiffs' decedent] did not deprive his surviving children of his companionship, nor did it, insofar as we can see, cause them the loss of any other constitutionally protected right. Neither in the complaint nor in his brief in opposition to the motion to dismiss does plaintiff point out any such rights to us. The motion to dismiss Count IV is therefore granted.

Id. at *16. Thus, Hudson is clearly distinguished from the instant case.

14

rights may be a necessary element of their Fourteenth Amendment claims, their reliance on that violation does not affect their standing to bring Fourteenth Amendment claims.

Defendants do not provide the court with a meaningful response to this argument. Instead, as Russ's parents point out, defendants cite cases wherein a party attempted to assert a Fourth Amendment claim that could have been brought (and in at least one case was brought) by the individual whose rights were supposedly violated. See e.g., Daniels v. Southfort, 6 F.3d 482, 484 (7th Cir. 1993) (dismissing the plaintiff's §1983 claims because he lacked standing to allege that his friends' Fourth Amendment rights were violated); Rakas v. Illinois, 439 U.S. 128 (1978) (finding petitioners' motion to suppress evidence properly denied because they lacked standing to assert a Fourth Amendment violation based on an allegedly improper search of another person's vehicle); United States v. Paymer, 447 U.S. 727 (1980) (reversing grant of motion to suppress where defendant lacked standing to argue that search of a third party's house [which produced the evidence that incriminated him] was improper under the Fourth Amendment); Coleman-Johnson v. Dignan, 1996 U.S. Dist. LEXIS 10250, *12-13, 1996 WL 417568, *4 (N.D. Ill. July 22, 1996) (granting summary judgment with respect to Fourth Amendment claims brought by plaintiffs who were not present during a search and therefore "could not have been detained or subjected to [the] excessive force" alleged).

Based on defendants' failure to address Russ's parents' argument, the court denies defendants' motion to dismiss Counts I, III, and V to the extent those counts state claims under the Fourteenth Amendment, and not directly under the Fourth Amendment. The court does not, however, find Russ's parents' proffered explanation sufficient to save Count IV, their claim that the individual officers conspired in violation of §1983.

In Count IV, Russ's parents allege that the individual officers' conspiracy deprived them of their "constitutional rights under the Fourth and Fourteenth Amendments by hindering the due course of justice and engaging in a coverup of the defendants' true involvement in the death of the decedent." Yet Russ's parents do not explain how their Fourteenth Amendment rights were violated by the alleged conspiracy. Unlike Counts I, III and V, where Russ's parents can potentially show a direct connection between their asserted constitutional injury under the Fourteenth Amendment and defendants' action (or inaction, as the case may be), no such connection is tenable based on the allegations in Count IV. Simply put, Russ's parents were not constitutionally harmed by the individual officers' alleged conspiracy to cover up Russ's death; it was the unlawful taking of Russ's life that arguably violated Russ's parents' Fourteenth Amendment right to the companionship, care, custody, and management of their son (which is the only constitutional injury Russ's parents have alleged). See Perry, 186 F.3d at 829 (explaining that "a causal relationship between the injury and the challenged conduct" is necessary to establish standing); see also Niehus v. Liberio, 973 F.2d 526, 531-32 (7th Cir. 1992) ("There is no tort without an injury, and this is as true of constitutional as of ordinary torts.") (citing Bastian v. Petren Resources Corp., 892 F.2d 680, 684 (7th Cir. 1990); Heil v. Morrison Knudsen Corp., 863 F.2d 546, 550 (7th Cir. 1988); Lossman v. Pekarske, 707 F.2d 288, 291 (7th Cir. 1983); Garza v. Henderson, 779 F.2d 390, 395 (7th Cir. 1985); Williams v. Boles, 841 F.2d 181, 183 (7th Cir. 1988)). Thus, the court dismisses Count IV, Russ's parents' conspiracy count claim.

## CONCLUSION

As explained above, Defendants' motion to dismiss is granted with respect to Counts II IV and VI, but denied with respect to all other counts. Defendants shall file answers to the remaining counts on or before April 5, 2002. This matter is set for a report on status April 9, 2002, at 9:00 a.m., at which time the parties shall present a definitive discovery schedule.

**ENTER:** **March 15, 2002**

**Robert W. Gettleman**
**United States District Judge**