Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4098 | **DATE** | 6/17/2004 |
| **CASE TITLE** | | Russ vs. Watts | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendants Watts', Banaszkiewicz's and Helson's motions for summary judgment are granted. Plaintiffs' motion for summary judgment is denied. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 1 8 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. The Court distributed Memorandum Opinion to the parties. | | 161 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MW courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER RUSS, et al.,              )
                                        )
                    Plaintiffs,         )
                                        )
        v.                              )    No. 01 C 4098
                                        )
VAN WATTS, et al.,                      )
                                        )
                    Defendants.         )

DOCKETED
JUN 1 8 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for summary judgment, on Defendants Van Watts', IV ("Watts") and Philip Banaszkiewicz's ("Banaszkiewicz") motion for summary judgment, and on Defendant Robert Helson's ("Helson") motion for summary judgment. For the reasons stated below we deny Plaintiffs' motion for summary judgment and grant the motion for summary judgment brought by Watts and Banaszkiewicz and grant the motion for summary judgment brought by Helson.

1

## BACKGROUND

Watts, Banaszkiewicz, and Helson are police officers that work for the City of Chicago ("City"). On June 5, 1999, Banaszkiewicz claims that he spotted a car being driven by Russ which cut across two lanes of traffic and nearly collided with two motorcyclists. Banaszkiewicz claims that he pulled behind Russ' car and turned on his blue lights. According to Banaszkiewicz, Russ did not stop until he reached a red light. Banaszkiewicz claims that he was wearing his uniform and that he exited his vehicle and knocked on the driver's side window of Russ' car, but Russ ignored him and when the light changed to green, Russ proceeded onward. Helson, who was driving home from a part-time security job, claims that he saw Russ start off with the green light, leaving Banaszkiewicz behind. Banaszkiewicz called for backup and Watts was called in to assist in the pursuit. A chase ensued and Russ finally stopped when he collided with other Chicago Police vehicles.

Banaszkiewicz and Helson approached the passenger's side window and Watts approached the driver's side of the car. Helson claims that he managed to crack open the passenger's side door and was able to calmly tell Russ that he was surrounded and that "he was not helping himself." Watts then broke the rear driver's side window of the car. Defendants claim that Russ reacted by reaching for Watts' gun. Defendants claim that Russ grabbed Watts' gun and after a few seconds

of a struggle the gun discharged, killing Russ. At the time of his death Russ was twenty-two years old and was a student at Northwestern University.

The administrator of Russ' estate brought a suit against Watts and the City on behalf of Russ' son, Robert Russ Jr., and the child's mother Erin Lewis ("Lewis") in Illinois state court for wrongful death and survival. A jury awarded Russ' estate $9.6 million. In the instant case, the Plaintiffs are Russ' parents and siblings who brought claims against the City, Watts, Banaszkiewicz, and Helson. Plaintiffs include in their amended complaint two substantive due process claims alleging violations of 42 U.S.C. § 1983 ("Section 1983") based on a severance of family relationships between Russ and his parents and Russ and his siblings (Counts I and II). Plaintiffs also brought a Section 1983 failure to prevent the use of excessive force claim (Count III), a Section 1983 conspiracy claim (Count IV), and a Section 1983 Monell claim against the City. Russ' siblings also allege violations of 42 U.S.C. § 1985 ("Section 1985") involving an alleged conspiracy to deny Russ' siblings access to the court system (Count VI). On March 15, 2002, Judge Gettleman, the prior judge in this case, granted Defendants' motion to dismiss all of the Section 1983 claims brought by Russ' siblings because his siblings did not have standing (Count II). Judge Gettleman also granted Defendants' motion to dismiss Russ' siblings' Section 1985 claims (Count VI). On April 30, 2004, Plaintiffs

3

voluntarily dismissed the Monell claim against the City (Count V).

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Defendants argue that Russ' parents lack standing to bring the instant suit. This issue was raised before Judge Gettleman in Defendants' motion to dismiss and on March 15, 2002, Judge Gettleman denied Defendants' motion to dismiss the parental claims due to a lack of standing. Judge Gettleman concluded that *Bell v. Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) is applicable to the claims of Russ' parents in the instant case and denied Defendants' motion to dismiss the parental claims based on a lack of standing. After the completion of discovery, Defendants now argue that they are entitled to summary judgment because Russ' parents lack standing. Plaintiffs offer no arguments on this issue in their answer to the instant motions. Plaintiffs state only that Judge Gettleman already decided the issue and Plaintiffs incorrectly state that Defendants have asked this court to "overrule the

holding of the Seventh Circuit Court of Appeals in *Bell v. Milwaukee*, 746 Fd. 2d [sic] 1205 (7th Cir. 1984) which allows the plaintiffs to maintain this action." (P. Ans. 2).

First of all, as we will explain below, we are not precluded from addressing this issue merely because of Judge Gettleman's ruling on Defendants' motion to dismiss. Secondly, Defendants have not asked this court to overrule *Bell* as Plaintiffs contend. Rather, Defendants ask this court to distinguish the instant case from *Bell*. This court has no authority whatsoever to overrule a decision of the Seventh Circuit. However, this court can address whether the instant case is distinguishable from *Bell*.

In *Bell* the Seventh Circuit held that a parent of a decedent had standing to bring a civil rights action based on the parent's constitutionally protected interest in maintaining a relationship with his child. *Id.* at 1244-45. The Seventh Circuit held that the plaintiff parent could bring a Section 1983 claim based upon the severance of the relationship between himself and his child despite the fact that, in that case, the parent's child was 23 years old when shot by police and was no longer a minor. *Id.* The Seventh Circuit also stated, in finding that the plaintiff parent had standing, that the child "had no children[,] . . . had not become a part of another family unit . . . [and] his father's family was his immediate family." *Id.* at 1245.

6

Judge Gettleman denied Defendants' motion to dismiss the parental claims based upon a lack of standing and his ruling is entitled to some deference. A subsequent judge sitting in a case cannot alter the prior judge's ruling "merely because he has a different view of the law or facts from the first judge." *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993)(stating that "litigants have a right to expect that a change in judges will not mean going back to square one."). However, a subsequent judge in a case may rule differently "if new information convinces him" that the prior ruling was incorrect. *Id.* Such is the case here. We have more facts before us than Judge Gettleman had before him in March of 2002. Our ruling on this issue does not mean that we are returning to "square one." Rather, our ruling is a part of the natural progression in these proceedings as they evolve from the pleadings to discovery to dispositive motions.

Judge Gettleman, in making his ruling on Defendants' motion to dismiss parental claims, made it clear that he could not rule in Defendants' favor on the parental standing issue based on the limited information that he had before him. For instance, Judge Gettleman stated that the only fact before him that differentiated this case from *Bell* was that Russ had "impregnated a woman" prior to his death and Judge Gettleman stated that he was hesitant to "deviate from *Bell's* clear holding based on th[at] fact alone." *Russ v. Watts*, 190 F.Supp.2d 1094, 1099 (N.D. Ill.

7

2002)(emphasis added)(stating in addition that he could not rule against the parents "as the facts now stand"). Judge Gettleman stated that he did not know whether "Russ and the mother of his child had formed their own family unit" and indicated that it is possible that "Russ and the mother of his child had not interacted at all since the child's inception. . . ." *Id.* Judge Gettleman was clearly inhibited in making an informed decision because the issue was presented to him at the motion to dismiss stage. We sit in a unique position having all of the fruits of discovery and evidence before us to assist us in our determination.

Judge Gettleman correctly concluded that "to answer the question of [parental] standing in the instant case, the court must determine whether Russ had become part of another family unit." *Id.* In the instant case, Plaintiffs admit pursuant to Local Rule 56.1, that, at the time of his death, Russ did not live at home, but rather lived on campus at Northwestern University. ( R W&B SF 8). Plaintiffs admit, pursuant to Local Rule 56.1, that "[w]hen Erin Lewis learned that she was pregnant with Robert Russ' child, they discussed the pregnancy." ( R W&B SF 9). Plaintiffs admit that "[b]efore his death, Robert Russ was making plans for taking care of his unborn son." ( R W&B SF 10). Watts and Banaszkiewicz allege as 56.1 fact number 13 that "Robert Russ and Erin Lewis discussed moving into together [sic] to raise their son." ( R W&B SF 13). Plaintiffs dispute the fact. However, in

denying Watts' and Banaszkiewicz's 56.1 fact number 13, Plaintiffs fail to directly respond to the asserted fact and fail to provide any citations to support their denial as is required by Local Rule 56.1. Local Rule 56.1(b)(3)(A); *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). In response to Watts' and Banaszkiewicz's statement of fact indicating that Russ and Lewis discussed moving in together to raise their son, Plaintiffs contend that Russ had sexual relations with Lewis only once, that Russ was not sure that Lewis was carrying his child, and that Russ "never indicated that he was going to move in [sic] or marry Erin Lewis." ( R W&B SF 13). None of Plaintiffs' facts respond directly to Watts' and Banaszkiewicz's 56.1 fact number 13. Therefore, Plaintiffs admit that Russ and Lewis discussed moving in together to raise their son.

We emphasize that we are not merely making findings based upon meaningless procedural technicalities. A court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Local Rule

56.1 requires a non-movant to point to the evidence that supports his view on a factual issue if the non-movant contends that there is a legitimate dispute regarding that issue to be settled at trial. A party is not entitled to proceed to trial and hope the jury will speculate, in the absence of evidence, to support the party's position. In this case Defendants have cited the deposition testimony of Lewis and Plaintiffs have merely attempted to side step the issue by providing an evasive reply. Furthermore, Plaintiffs have failed to cite to any evidence whatsoever that they could present at trial that would allow a reasonable jury to find in their favor on the issue of whether or not Russ and Lewis discussed moving in together and raising their son.

It is clear from the facts and the totality of the circumstances before us that Russ was no longer living at home at the time of his death and that he had formed a new family unit. The evidence reflects that he planned to move in with Lewis and raise his son. Plaintiffs admit, pursuant to Local Rule 56.1, that "[b]efore his death, Robert Russ was making plans for taking care of his unborn son." ( R M&W 10). Plaintiffs admit, pursuant to Local Rule 56.1, that Russ was "'looking forward' to becoming a father." ( R M&W SF 14). We find it commendable that Russ would take responsibility for his child's welfare. Plaintiffs also admit, pursuant to Local Rule 56.1, that Russ' mother stated at her deposition that Russ was "a grown man and he could handle his own business." (Love Dep. 82)( R W&B SF 16). This

further demonstrates that Russ' parents were no longer his immediate family unit. It was Russ' newly formed family unit consisting of his son and his son's mother that recovered the $9.6 million in state court for the shooting incident. ( R M&W SF 46). It was Lewis, acting as mother and guardian of Robert Russ, Jr. and as the administrator of the estate of Robert Russ that filed the second amended complaint in Illinois state court and who received the jury award. ( R M&W SF 45). There are ample facts that distinguishes this case from *Bell*. There is no indication that *Bell* intended to expand standing for Section 1983 claims to the extent sought in this suit. In fact, the court in *Bell* recognized that there were limitations to standing for such Section 1983 suits when the court ruled that siblings did not have standing to bring such Section 1983 suits. 746 F.2d at 1247. Russ' parents have not shown that they have standing to proceed in this suit. Therefore, we grant summary judgment for all the remaining Defendants.

## CONCLUSION

Based on the foregoing analysis, we grant the motions for summary judgment brought by all remaining Defendants and deny Plaintiffs' motion for summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 17, 2004